# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LISA SALVATO**, | : |
| *Plaintiff* | : Case No. 19-cv-2079-JMY |
| v. | : |
| **CITY OF PHILADELPHIA, ET AL.**, | : |
| *Defendants* | : |

## MEMORANDUM

**YOUNGE, J.**                                                                 **JANUARY 15, 2020**

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Mot.," ECF No. 8). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth below, Defendants' Motion will be granted in part and denied in part, but Plaintiff will be given leave to file an amended complaint as explained herein.

## I. BACKGROUND

### A. Facts

Unless otherwise noted, the following facts and allegations are taken from Plaintiff's First Amended Complaint ("FAC," ECF No. 6).[1] For the purposes of the instant motion, the Court takes as true all factual allegations contained in Plaintiff's FAC.

Plaintiff Lisa Salvato is currently employed as a police officer with Defendant City of Philadelphia ("City") and "has been employed in that capacity since at least 2012." (*Id*. ¶¶ 3, 7.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

In 2013, Plaintiff filed a lawsuit against City alleging sexual harassment and retaliation. (*Id.* ¶¶ 9-10.) In July 2014, Plaintiff and City settled the lawsuit, which included, in part, the transfer of Plaintiff to the Major Crimes Unit. (*Id.* ¶¶ 11-12.)

"On July 9, 2014, Plaintiff reported to the Major Crime[s] Unit. Plaintiff was immediately told by new coworkers that they had heard about her lawsuit." (*Id.* ¶ 13.) Specifically, Captain Roland Lee "approached Plaintiff and said 'I know who you are and how you got here.'" (*Id.* ¶¶ 14-15.) Captain Lee allegedly "continually harassed Plaintiff about various issues because Plaintiff had filed a discrimination lawsuit" and "frequently ordered Plaintiff to put the names of other employees on her work so that they got credit for the work." (*Id.* ¶¶ 16, 18.) In December 2014, Plaintiff approached Captain Lee regarding an internal promotion, to which Captain Lee responded "As long as I am captain, you aren't going anywhere. If you don't like it transfer out." (*Id.* ¶ 17.)

Thereafter, in February 2017, Captain "Lee ordered Plaintiff to move her desk to an isolated location." (*Id.* ¶ 19.) Then, on November 11, 2017, "Plaintiff was walking into the building where she worked when a supervisor sped up behind her in his car, forcing Plaintiff to jump out of the way of the speeding car." (*Id.* ¶ 20.) "Plaintiff had a severe physical reaction to the stress caused by the accident," and on November 13, 2017, Plaintiff reported the incident. (*Id.* ¶¶ 22-23.) "Both [Captain] Lee and Plaintiff's supervisor harassed and berated her for reporting the incident." (*Id.* ¶ 24.)

In July 2018, "Plaintiff was subjected to fabricated disciplinary charges" and was "loudly and publicly berated by a coworker." (*Id.* ¶¶ 25-26.) Plaintiff further alleges that "[o]n July 31, 2018, Plaintiff was taken off a case she had been working on for almost two years[,]" and that

2

the "fabricated discipline against Plaintiff is currently pending and could lead to her termination." (*Id.* ¶¶ 28-29.)

Plaintiff alleges that "Defendant City, at the time Plaintiff was sexually harassed and retaliated against and for many years prior, has and had a well settled practice of sexual harassment and retaliation pervading the police department." (*Id.* ¶ 30.) More specifically, Plaintiff asserts that the City's police department "maintains a grossly sexist culture[,]" that "[m]ale employees of all ranks . . . on a weekly basis barrage female officers with demeaning sexist comments and conduct[,]" and that the department's "culture, policies and practices protect sexual harassers and cover up sexual abuse by officers." (*Id.* ¶¶ 31-34.) Accordingly, Plaintiff asserts that "Defendant City's well settled practice of sexually harassing and retaliating against female officers was and is a substantial reason for the discipline and harassment she is currently enduring." (*Id.* ¶ 38.)

Plaintiff also alleges that after "the filing of the complaint in this matter, as of May 21, 2019, Plaintiff was transferred [to a division requiring a longer daily commute], as harassment and in retaliation for her complaints[.]" (*Id.* ¶ 39.) Plaintiff maintains that the transfer is retaliatory and punitive because "Defendant City knew at the time of the transfer and ongoing, that the transfer creates an unstable, unsafe environment for Plaintiff's daughter[, who suffers from serious disabilities,] at a crucial time in her therapy." (*Id.* ¶¶ 40, 42.) As such, Plaintiff asserts that "Defendant City's refusal to accommodate [the] transfer of Plaintiff to an assignment that allows her to care for her child is retaliation for the filing of this lawsuit, because of her past complaints and because she is a woman." (*Id.* ¶ 48.)

### B. Procedural History

On January 16, 2018, "Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") alleging race and sex discrimination and retaliation." (*Id.* ¶ 27.) On November 30, 2018, the EEOC issued a Notice of Dismissal and Right to Sue letter. (*Id.* at 10.) On May 8, 2019, Plaintiff filed this action in the Court of Common Pleas, Philadelphia County. (Notice of Removal, ECF No. 1 at 6.) Defendants removed the action to this Court on May 13, 2019, pursuant to 28 U.S.C. § 1441. (*See id.*)

On June 26, 2019, Plaintiff filed her FAC, in which she asserts four claims for relief:

**COUNT 1**: "Violation of 42 U.S.C. § 1983 (*Monell*)," against Defendants City and Police Commissioner Richard Ross;

**COUNT 2**: "Violation of Title VII of the Civil Rights Act of 1964: Retaliation," against Defendant City;

**COUNT 3**: "Pennsylvania Human Relations Act [('PHRA')]: Retaliation," against Defendant City; and

**COUNT 4**: "First Amendment," against Defendant City.

(FAC ¶¶ 49-65.) Plaintiff seeks monetary damages as well as attorneys' fees and costs. (*See id.*)

Defendants filed the instant motion on July 10, 2019. Plaintiff filed her opposition to Defendants' motion on August 14, 2019 ("Opp.," ECF No. 12).

## II. LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate,*

*LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

**III. DISCUSSION**

Defendants move to dismiss all of Plaintiff's claims. Specifically, Defendants maintain that: (1) Plaintiff's *Monell* claim "fails because Plaintiff does not state a plausible claim for relief[;]" (2) the Title VII and PHRA retaliation claims are both "time-barred and insufficient[ly pled] to establish a causal connection between the alleged protected conduct and retaliatory action[;]" and (3) Plaintiff's "First Amendment claim fails because it pertains to her own treatment and is manifestly not the speech of a citizen on a matter of public concern." (Mot. at 3.) Plaintiff disputes these arguments and asserts that she has stated plausible claims for relief. (*See* Opp. at 6.) The Court will address each claim in turn.

**A. Claim for *Monell* Liability Under 42 U.S.C. § 1983**

Plaintiff's 42 U.S.C. § 1983 claim is asserted against both Defendant City and Defendant Police Commissioner Richard Ross. (*See* FAC at 7.) It is undisputed that the liability of a municipality—in this case, the Defendant City of Philadelphia—under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipal entity may be liable under 42 U.S.C. § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id.* at 694; *see also Reitz v. Cty. of Bucks*, 125 F.3d 139, 144 (3d Cir. 1997). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

In support of her *Monell* claim, Plaintiff alleges the following in her FAC:

> As a result of Defendants' Constitutionally infirm policies, customs and practices described above, Plaintiff has been deprived of her

6

> pursuit of Life, Liberty and Happiness, Due Process and other Constitutional Rights in violation of the *Fourth and Fourteenth Amendments*.

(FAC ¶ 50 (emphasis added).)

The Court is intrigued by this contention given that Plaintiff has not actually asserted claims for violation of the Fourth or Fourteenth Amendment. The Court's determination that Plaintiff has not alleged a constitutional violation, specifically under the Fourth or Fourteenth Amendment, is fatal to her *Monell* claim here, since the existence of a municipal policy only would be actionable if it were causally connected to a constitutional violation. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual [municipal employee], the fact that the departmental regulations might have authorized [unconstitutional conduct] is quite beside the point."); *K.W. by & through White v. Se. Pa. Transp. Auth.*, 760 F. App'x 104, 109 (3d Cir. 2019) (noting that *Monell* "claims require a predicate constitutional violation"); *see also Williams v. City of Allentown*, No. 17-4910, 2018 WL 3707382, at *8 (E.D. Pa. Aug. 3, 2018) (dismissing *Monell* claim because there was no constitutional violation alleged). Moreover, upon review of the FAC, the Court finds that Plaintiff has failed to identify any custom or policy that would violate her rights under the Fourth or Fourteenth Amendments.

As to Defendant Police Commissioner Richard Ross, Defendants contend that he "should be dismissed from the complaint because Plaintiff has failed to specifically allege any claims against him." (Mot. at 19.) In response, Plaintiff asserts that Defendant "Ross should not be dismissed from this Complaint because he is the decision-maker." (Opp. at 9.) The Court finds that Plaintiff has failed to allege any action on the part of individual Defendant Ross to warrant liability. In fact, the only conduct attributable to Defendant Ross alleged in the FAC includes the

7

following: Defendant Ross "has been the Commissioner of the Philadelphia Police Department since 2016. As Commissioner and in his prior role(s) within the Police Department, Commissioner Ross is responsible for promulgating and enforcing all policies, customs and practices of the City Police Department." (FAC ¶ 4.) The fact that Defendant Ross is the top official in the Philadelphia Police Department does not equate to factual support for Plaintiff's assertion that "the Commissioner was responsible for promulgating the polices and practices that allow the City of Philadelphia male police officers to retaliate against females who make complaints about harassment." (*See* Opp. at 9); *Rees v. Office of Children & Youth*, 473 F. App'x 139, 143-44 (3d Cir. 2012) (affirming dismissal of *Monell* claim for failing to "link the alleged offending policies or customs to anyone . . . who had policy-making authority"); *see McTernan v. City of York, PA*, 564 F.3d 636, 658-59 (3d Cir. 2009); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (explaining that "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom).

Accordingly, the Court will dismiss without prejudice Plaintiff's first cause of action for *Monell* liability.

### B. Title VII and PHRA Retaliation Claims

Next, Defendants argue that Plaintiff's Title VII and PHRA retaliation claims are both time-barred and procedurally deficient in that she has not exhausted her administrative remedies. (*See* Mot. at 14-17.) Defendants also argue that Plaintiff has failed to plead facts supporting causation. (*Id*. at 17-19.) The Court will first discuss Defendants' timeliness and administrative exhaustion arguments and will then turn to the issue of causation.

1. *Claims that arose before the filing of the EEOC charge*

Plaintiff filed her charge with the EEOC on July 16, 2018. (FAC ¶ 27.)[2] In her FAC, Plaintiff alleges that discriminatory and retaliatory acts occurred in July and December 2014 (*Id.* ¶¶ 13-17), February 2017 (*Id.* ¶ 19), November 2017 (*Id.* ¶¶ 20, 24), July 2018 (*Id.* ¶ 25-28), and May 2019 (*Id.* ¶ 39). Defendants contend that any alleged adverse actions against Plaintiff that occurred on or before September 19, 2017 should be dismissed as time-barred, because those alleged acts occurred more than 300 days before Plaintiff filed her EEOC charge. (Mot. at 16.)

The undersigned agrees. A plaintiff seeking relief under Title VII must first "exhaust her administrative remedies by filing a timely discrimination charge with the EEOC." *Barzanty*, 361 F. App'x at 413 (citing 42 U.S.C. § 2000e-5(b), e(1), & f(1)). Specifically, Plaintiffs in deferral states, such as Pennsylvania, must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1); *see also Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). Presently, the FAC alleges claims for adverse actions that occurred in July and December 2014, as well as February 2017. (*See* FAC ¶¶ 13-17, 19.) Plaintiff could have timely filed claims with the EEOC/PHRC for any of those actions, but she did not. Because Plaintiff filed her charge with the EEOC on July 16, 2018, actions that occurred more than 300 days before said filing date are untimely. Therefore, to the

---

[2] The Court notes that although Plaintiff pled that she filed a charge with the EEOC on July 16, 2018, Plaintiff has not included with her FAC a copy of the charge filed with the EEOC to establish the allegations set forth therein. *See Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996) (stating that the ensuing federal suit is limited to claims that are within the scope of the initial administrative charge). Further, Plaintiff has failed to allege in her FAC that she dual filed her charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff is granted leave to amend accordingly, otherwise the Court will dismiss both of Plaintiff's claims for failure to exhaust her administrative remedies. *See Barzanty v. Verizon Pa, Inc.*, 361 F. App'x 411, 413-14 (3d Cir. 2010) (affirming district court's dismissal of hostile work environment claim for failure to exhaust administrative remedies, and explaining that the "purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court").

extent that Plaintiff's Title VII and PHRA retaliation claims are based on incidents that occurred more than 300 days before July 16, 2019, the Court finds that those claims are time-barred.

2. *Claim that arose during the EEOC investigation*

Plaintiff's FAC alleges an incident that occurred after she filed her charge, namely, on July 31, 2018, when "Plaintiff was taken off a case she had been working on for almost two years." (FAC ¶ 28.)

A plaintiff must exhaust his or her administrative remedies with respect to all claims; however, a court may nonetheless assume jurisdiction over claims not technically exhausted if they are reasonably within the scope of the complainant's EEOC charge and would be encompassed by the EEOC investigation. *See Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (holding Title VII's exhaustion requirement did not bar plaintiff's retaliatory discharge claim where the EEOC had completed an investigation of a pattern of retaliatory acts by defendant prior to plaintiff's termination). In *Waiters*, the Third Circuit stated that "suits based on new acts that occur during the pendency of the [EEOC investigation] which are fairly within the scope of an EEOC complaint" are permitted. *Id.* However, there must be a "close nexus" between the facts alleged in the administrative charge and any newly raised claim. *See Hicks v. ABT Assocs.*, 572 F.2d 960, 967 (3d Cir. 1978). Thus, the relevant test is whether the alleged acts in the federal lawsuit are fairly encompassed within the scope of the prior agency charge and related investigation. *See Antol*, 82 F.3d at 1295 (citing *Waiters*, 729 F.2d at 233).

In regards to the alleged July 31, 2018 adverse action, that Plaintiff was removed from a case she had been working on for almost two years (*see* FAC ¶ 28), the question is whether this act was within the scope of her July 16, 2018 charge or the investigation arising therefrom. Unfortunately, the Court cannot resolve that question at this time as Plaintiff has failed to append

10

to her FAC a copy of the charge filed with the EEOC. *See* Section III.B.1.n.2, *supra*. Accordingly, at this time, the Court will not consider the July 31, 2018 adverse action in its discussion regarding causation *infra*.

### 3. *Claim that arose after the EEOC issued its Notice of Dismissal and Right to Sue letter*

The EEOC issued a Notice of Dismissal and Right to Sue Letter on November 30, 2018. (FAC ¶ 5.) Plaintiff's FAC alleges an incident that occurred after the EEOC issued its Notice of Dismissal, namely, that "as of May 21, 2019 Plaintiff was transferred, as harassment and in retaliation for her complaints[.]" (*Id.* ¶ 39.) The Third Circuit has not issued a precedential opinion on the issue of administrative exhaustion requirements when independent acts occur after an administrative investigation has concluded. *See Fogarty v. Univ. of Pittsburgh of the Commw. Sys. of Higher Ed.*, No. 19-173, 2019 WL 5310661, at *5 (W.D. Pa. Oct. 21, 2019). However, in a non-precedential opinion, the Third Circuit held that a new EEOC charge is required when "a discrete act . . . occur[s] after [the plaintiff] had received her right to sue letter from the EEOC on her earlier claim." *Green v. Postmaster Gen.*, 437 F. App'x 174, 178 (3d Cir. 2011) (citing *Waiters*, 729 F.2d at 237). Many district courts within this circuit have reached the same conclusion. *See, e.g., Fogarty*, 2019 WL 5310661, at *5; *Darrington v. Milton Hersey Sch.*, No. 18-4265, 2019 WL 1470865, at *2 (E.D. Pa. Apr. 3, 2019); *Risser v. Steelton-Highspire Sch. Dist.*, No. 17-357, 2017 WL 5625766, at *6-7 (M.D. Pa. Nov. 22, 2017) (ruling that plaintiff had not exhausted his administrative remedies for one alleged incident of discrimination because that incident occurred after plaintiff received the final right to sue letter). Therefore, the Court finds here that the May 21, 2019 involuntary transfer required EEOC administrative filing and exhaustion. Accordingly, to the extent that Plaintiff's Title VII and

11

PHRC retaliation claims may be based on the alleged May 21, 2019 transfer, those claims will be dismissed for failure to exhaust administrative remedies.

### 4. *Causation*

A *prima facie* case of retaliation requires a plaintiff to establish that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007).[3] At issue here is the third prong: a causal connection between Plaintiff's protected activity—Plaintiff's 2013 "lawsuit alleging discrimination[,]" which settled in 2014—and Defendant City's "adverse employment actions . . . including . . . causing her to think she was being violently run over [in 2017] and fabricating disciplinary [charges] against her [in July 2018]." (FAC ¶¶ 20, 26, 53-54.)

A plaintiff asserting a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). A plaintiff can make this showing "by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (internal quotation marks and citation omitted).

---

[3] The Third Circuit has stated that "[t]he language of the PHRA is . . . substantially similar to [Title VII and other federal] anti-retaliation provisions, and we have held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different . . ." *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002). Moreover, the standard for employer liability under the PHRA is the same as the standard for liability under Title VII. *See Knabe v. Boury Corp.*, 114 F.3d 407, 410 n.5 (3d Cir. 1997).

Defendants contend that "Plaintiff has failed to identify any link between protected activity . . . and any adverse action that occurred contemporaneously or after the protected activity, with a causal connection between the protected activity and the adverse action." (Mot. at 18.) The Court agrees.

Plaintiff's initial sexual harassment lawsuit settled in July 2014. (*See* FAC ¶¶ 9-11.) Years later, in November 2017, Plaintiff alleges she was "harassed and berated" for reporting an incident that involved her supervisor speeding his car up behind her, and in July 2018, "Plaintiff was [both] loudly and publicly berated by a coworker[, and] subjected to fabricated disciplinary charges." (*Id*. ¶¶ 20-26.) The extended period of time that passed between Plaintiff's settlement in July 2014 and the City's alleged actions regarding public beratement by a supervisor and instituting false disciplinary charges is not "unusually suggestive of retaliatory motive" such that she could establish but-for causation. *See Williams v. Phila. Hous. Autho. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (concluding that a gap of over two months to be insufficient alone to be "unduly suggestive" of retaliation), *superseded by statute on other grounds as recognized in*, *Lewis v. Univ. of Pa.*, 779 F. App'x 920, 925 (3d Cir. 2019); *see also LeBoon*, 503 F.3d at 233 (noting that there is "no bright line rule" for unusually suggestive temporal proximity). The Court further finds that there are no allegations that would indicate a consistent pattern of antagonism or inconsistent explanations for the City's actions. Accordingly, the Court finds that Plaintiff has not sufficiently alleged a *prima facie* case of retaliation under Title VII or the PHRA. These claims, however, will be dismissed without prejudice.[4]

---

[4] As indicated above, *see* Section III.B.2 *supra*, the Court declined on administrative exhaustion grounds to consider the alleged July 31, 2018 adverse action. (*See* FAC ¶ 28.) Nonetheless, the Court notes Plaintiff's argument that "this is a retaliation claim related to Defendant having Plaintiff removed and disciplined." (Opp. at 8.) Thus, to the extent Plaintiff alleges that the July 16, 2018 EEOC filing (*i.e.*, protected activity) and subsequent July 31, 2018 removal from a two-year work project (*i.e*, adverse action) constitute retaliation, the Court will grant Plaintiff leave to amend her claims.

### C. First Amendment Retaliation Claim

The final component of Defendants' motion challenges the substance of Count IV of the FAC, which avers a violation of the First Amendment through 42 U.S.C. § 1983. (*See* FAC ¶ 64.) Specifically, Plaintiff asserts that "[i]n response to the [filing of the] complaint [in the instant action], Defendant City [involuntarily] transferred Plaintiff and refused to move Plaintiff to an assignment that would accommodate her disabled child[.]" (*Id.* ¶ 63.)

"To make out a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) he engaged in First Amendment protected activity, (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the adverse action was prompted by the plaintiff's protected activity." *Rossiter v. City of Phila.*, 674 F. App'x 192, 196 (3d Cir. 2016) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). The first issue—whether a plaintiff engaged in protected activity—is a question of law for the court to decide. *See Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2005). A court makes this determination by looking at the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

Defendants argue that the speech at issue does not constitute the speech of a citizen on a matter of public concern, as required for First Amendment protection. (Mot. at 11-14.) Defendants acknowledge that "[a] public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Brennan*, 350 F.3d at 412. Defendants argue, however, that in this case Plaintiff's speech is not a matter of public concern because the allegations in the FAC "pertain only to conduct directed towards plaintiff and were made to advance only her own interests . . . [and,

14

s]imply referring to the City's well-settled practice of sexual harassment in the Police Department does not render her complaints a matter of public concern." (Mot. at 13 (internal quotation marks and citation omitted).)

In support of their argument, Defendants point to the Supreme Court case of *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011). (*See* Mot. at 12-13.) *Borough of Duryea* involved a small town police chief who was terminated from his position for having "engaged in misconduct, including attempting to intimidate council members." *Borough of Duryea*, 564 U.S. at 383. After "fil[ing] a union grievance challenging his termination" and proceeding to "arbitration pursuant to the police union collective-bargaining agreement," the police chief was reinstated. *Id*. Upon reinstatement, the borough council issued several directives to the chief, which included a prohibition on working overtime "without the council's express permission." *Id*. In the ensuing litigation, the chief claimed that these directives were issued in retaliation for him having "filed a union grievance challenging his termination," and that this speech was protected under the Petition Clause of the First Amendment. *Id*.

The Court finds that Plaintiff has presented a colorable claim that she filed the action *sub judice* as a citizen addressing a matter of public concern. Taking as true the allegations in Plaintiff's FAC (*see* FAC ¶¶ 30-35, 38), the Court finds that these assertions implicate a matter of public concern as they raise serious questions of sexual harassment and a retaliatory misogynistic culture within the Philadelphia Police Department. Defendants cite to *Borough of Duryea* for the proposition that the Petition Clause does not afford public employees "a right to transform everyday employment disputes into matters for constitutional litigation[.]" (Mot. at 14 (internal quotation marks and citation omitted).) However, while the Court in *Borough of Duryea* did note "the private nature of many petitions for redress," including the filing of

lawsuits, the Court did not reach a conclusion as to whether the police chief's speech was protected under the First Amendment. *See Borough of Duryea*, 564 U.S. at 394. Instead, the only question before the Court was whether speech under the Petition Clause was subject to the same "public concern" test as speech under the Free Speech Clause. *Id*. In holding that speech under the Petition Clause is subject to the same standard, the court also noted that when government employees file grievances or a lawsuit over the conditions of their employment, it can be a matter of public concern since the litigation serves "as a vehicle for effective political expression and association, as well as a means of communicating useful information to the public." *Id*. at 397 (citing *In re Primus*, 436 U.S. 412, 431 (1978)). As such, speech motivated by private concern can qualify as protected so long as it is a matter which also concerns the public. *See Rankin v. McPherson*, 483 U.S. 378, 386 n.11 (1987) (stating that "[t]he private nature of the statement does not . . . vitiate the status of the statement as addressing a matter of public concern").

As to "content," the Court finds that allegations of sexual harassment and misogynistic retaliatory culture within the Philadelphia Police Department are relevant to the public's perception of this law enforcement agency. *Cf. Rode v. Dellarciprete*, 845 F.2d 1195, 1201-02 (3d Cir. 1988) (finding allegations concerning discrimination by the Pennsylvania State Police to be of particular public importance because "of the prior protracted history of litigation against [the state police] charging it with racial animus in its employment practices"). Further, with respect to the "form" and "context" of the speech at issue, the Court notes that a federal court filing is a public communication. *See Southerton v. Borough of Honesdale*, No. 17-165, 2018 WL 5810269, at *7 (M.D. Pa. Nov. 6, 2018) (recognizing that a court filing is a public communication) (citing *Sharif v. Manning*, No. 13-96, 2013 WL 3754818, at *12 (M.D. Pa. July

16

11, 2013)). Accordingly, the Court concludes that the complaint Plaintiff filed in this action on May 8, 2019 is protected speech for purposes of her First Amendment retaliation claim.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part Defendants' Motion to Dismiss. An appropriate Order will follow.

**IT IS SO ORDERED.**

**BY THE COURT:**

/s/ Judge John Milton Younge

**Judge John Milton Younge**
